IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THOMAS J. HOOGHE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 3:25-cv-00823 |
| | ) |
| TK HEALTH, et al., | ) JUDGE CAMPBELL |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Thomas Hooghe, an inmate of the Sumner County Jail proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1 ("the Complaint")) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 7.) On October 29, 2025, the Court denied Plaintiff's IFP application without prejudice and ordered him to file a new IFP application or pay the filing fee within 30 days. (Doc. No. 9.) Plaintiff filed a new IFP application on November 18, 2025. (Doc. No. 11.)

This case is before the Court for ruling on Plaintiff's new IFP application and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

### I. PAUPER STATUS

Subject to certain statutory requirements, *see* 28 U.S.C. § 1915(a)(1)–(2), (g), a prisoner bringing a civil action may be permitted to proceed as a pauper, without prepaying the $405 filing fee. Because Plaintiff's new IFP application complies with the applicable statutory requirements and demonstrates that he lacks the funds to pay the entire filing fee, that application (Doc. No. 11) is **GRANTED**.

Nevertheless, prisoners bringing civil lawsuits or appeals are "required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). Where the prisoner proceeds IFP, the fee is $350 instead of $405, *see id.* § 1914(a)–(b) & Dist. Ct. Misc. Fee Schedule, provision 14 (eff. Dec. 1, 2023), and may be paid in installments over time via an assessment against his inmate trust account. 28 U.S.C. § 1915(b)(1)–(2).

Accordingly, Plaintiff is **ASSESSED** a $350 filing fee. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. Legal Standard

In cases filed by prisoners, the Court must conduct an initial screening and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Review under the same criteria is also authorized under 28 U.S.C. § 1915(e)(2) when the prisoner proceeds IFP.

To determine whether the Complaint states a claim upon which relief may be granted, the Court reviews for whether it alleges sufficient facts "to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A viable claim is stated under 42 U.S.C. § 1983 if the Complaint plausibly alleges (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

3

Case 3:25-cv-00823   Document 12   Filed 11/20/25   Page 3 of 7 PageID #: 44

### B. Factual Allegations

Plaintiff sues TK Health, the company which provides healthcare personnel and services for the Sumner County Jail; Nursing Supervisor Sharon Harris, who is employed by TK Health; and Jerry Scott, the Jail Administrator. (Doc. No. 1 at 2–3.) Plaintiff claims that his rights under the Eighth and Fourteenth Amendments are being violated while he serves a misdemeanor sentence in the Jail, because Defendants are refusing to treat his "obviously broken right ankle" (except by providing a walking boot) and refusing to refer him for a medically necessary surgery despite knowing (1) that he is in excruciating pain and (2) that failure to operate could result in a catastrophic outcome. (*Id.* at 3–5.) Plaintiff was scheduled to have an operation on his ankle in May 2025, prior to arriving at the Jail on May 22. (*Id.* at 5.) He accuses Defendants of "trying to run out the clock to avoid surgery expenses before [his] sentence expiration in February." (*Id.* at 5.) He refers to an "attached motion for a preliminary injunction . . . to order them to perform the required surgery," and further seeks an award of compensatory and punitive damages. (*Id.*).

Included with the Complaint was a notice that Plaintiff was being sent to the Knox County Jail "for court." (Doc. No. 3.) On September 30, 2025, the Court received a letter from Plaintiff stating that he was "back in the Sumner Co[unty] Jail after two months in Knox Co[unty]." (Doc. No. 7.)

On November 18, 2025, the Court received a letter from Plaintiff stating that he had been seen by an orthopedic surgeon on October 29, and that the surgeon had opined that Plaintiff is in danger of losing his right foot if surgery is not performed on his broken ankle, due to the onset of gangrenous necrosis. (Doc. No. 10.)

### C. Analysis

As an initial matter, Plaintiff twice refers to a motion for injunctive relief that was

4

purportedly filed with his Complaint in July 2025 (Doc. No. 1 at 5; Doc. No. 10), but no such motion is reflected on the docket of this case, and the Complaint seeks only damages.

Based on Plaintiff's letters to the Court, it appears that he was transported from Sumner County to Knox County at or around the time he filed his Complaint, and that he was seen by an orthopedic surgeon within roughly a month after returning to Sumner County. Nevertheless, as explained below, the allegations of the Complaint are sufficient to support a plausible claim of deliberate indifference to serious medical needs beginning when Plaintiff arrived at the Sumner County Jail, in May 2025.

For purposes of initial review, the Court presumes that Plaintiff was a pretrial detainee for a portion of his time at the Sumner County Jail; his Complaint, filed on July 22, 2025, states that he is "serving a misdemeanor sentence" but was "originally a pretrial detainee" upon arriving at the Jail on May 22, 2025. (Doc. No. 1 at 4.) He appears to have been in Knox County from late July to late September 2025 to attend court (*see* Doc. Nos. 3, 7), perhaps for purposes of resolving pending criminal charges there. As a pretrial detainee, Plaintiff had a Fourteenth Amendment right to be free from deliberate indifference to serious medical needs. *See Hyman v. Lewis*, 27 F. 4th 1233, 1237 (6th Cir. 2022). To state a claim for a violation of this right, Plaintiff must allege that: (1) he had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F. 4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted).

At this initial stage, the Court construes the Complaint liberally and in Plaintiff's favor. He alleges that he arrived at the Jail on May 22, 2025, with his ankle obviously broken and causing him excruciating pain. He told the Jail medical staff upon arrival that he had previously been

informed by a surgeon in Mississippi that surgery was necessary to avert "catastrophic consequences," but Defendants refused to refer him for surgery or provide an x-ray or any treatment at all, other than "sending a walking boot to [his] cell." (*Id.* at 5.) For purposes of initial review, the Court finds these allegations sufficient to establish both elements of a Fourteenth Amendment deliberate indifference claim.

This claim will proceed for further development against all named Defendants. At this early stage where all reasonable inferences must be drawn in Plaintiff's favor, Defendants Harris and Scott are reasonably implicated as officials with the decision-making authority to forestall necessary treatment in order "to avoid surgery expenses before [Plaintiff's] sentence expiration in February [2026]." (Doc. No. 1 at 5.) And, while Plaintiff does not explicitly link this decision to a policy of TK Health that privileges cost-savings over expenditures when inmates with medical needs are close to their release date,[1] such a claim is reasonable to infer from his allegations.

### III. CONCLUSION

As explained above, the Complaint in this case will be allowed to proceed.[2]

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for each named defendant. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packets, the

---

[1] For TK Health to be liable, Plaintiff must establish that a corporate policy or custom was a cause of the alleged constitutional deprivation. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (liability of corporate provider of healthcare at county jail must, like liability of county itself, "be premised on some policy that caused a deprivation of Starcher's Eighth Amendment rights").

[2] The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendants. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE